**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

     **vs.**

**CHRISTOPHER J. PRATT,**

             **Defendant/Petitioner.**

**1:18-CR-348**
**(MAD)**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY** | **NICHOLAS C.E. WALTER, AUSA** |

**OFFICE OF THE UNITED**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207
Attorney for the Government

**CHRISTOPHER J. PRATT**
24829-052
Federal Correctional Institution
FCI Loretto
P.O. Box 1000
Cresson, Pennsylvania 16630
Defendant/Petitioner, *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 18, 2021, Christopher J. Pratt ("Petitioner" or "Defendant") pled guilty to one count of distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) and 2256(8)(A); and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). *See* Dkt. No. 105; Text Minute Entry 08/18/2021. Defendant was

sentenced on June 26, 2022, to 148 months' imprisonment followed by fifteen years of supervised release. *See* Dkt. No. 142; Text Minute Entry 07/27/2022.

Presently before the Court is Petitioner's *pro se* motion to vacate, set aside, or correct his conviction or sentence pursuant to 28 U.S.C. § 2255. *See* Dkt. No. 159. Petitioner argues his three attorneys—two court-appointed attorneys and one retained attorney—were ineffective in representing him before this Court and on appeal. *See id.* The Government opposes the motion. *See* Dkt. No. 161. Petitioner filed a reply. *See* Dkt. No. 165. For the reasons set forth below, Petitioner's motion is denied.

## II. BACKGROUND

This case was initiated with the filing of a criminal complaint on June 9, 2017, alleging one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *See* Dkt. No. 1. A warrant for Defendant's arrest was issued the same day. *See* Dkt. No. 2. On June 14, 2017, Defendant appeared before Magistrate Judge Christian F. Hummel and waived his right to a detention hearing. See Text Minute Entry 06/14/2017. A preliminary hearing was scheduled for July 12, 2017, *see id.*, and Defendant was remanded to the custody of the U.S. Marshal, *see* Dkt. No. 5. On June 20, 2017, counsel for Defendant and the Government filed a stipulation to exclude time under the Speedy Trial Act, *see* Dkt. No. 6, which Magistrate Judge Hummel entered the same day, *see* Dkt. No. 7. Defense counsel sought an adjournment of the preliminary hearing, *see* Dkt. No. 8, which was granted, *see* Dkt. No. 9. Defendant subsequently waived his preliminary hearing. *See* Dkt. Nos. 11, 12.

On August 8, 2017, Defendant requested a detention hearing. *See* Dkt. No. 13. Magistrate Judge Hummel held the hearing on August 18, 2017, and ordered Defendant to remain in custody. *See* Dkt. No. 15. The parties then filed seven stipulations to exclude time under the

Speedy Trial Act, which were approved, and time was excluded between August 28, 2017, and October 21, 2018.  *See* Dkt. Nos. 16-29.  The Government then returned a three-count indictment on October 18, 2018, charging Defendant with the three crimes to which he eventually pled guilty.  *See* Dkt. No. 30.  Defendant waived his personal appearance and entered a plea of not guilty on October 26, 2018.  *See* Dkt. No. 32.  The parties subsequently filed additional stipulations to exclude time, which were granted, and time was excluded between November 7, 2018, and March 4, 2019.  *See* Dkt. Nos. 35-39.

Defendant's first court-appointed attorney filed a motion to suppress on Defendant's behalf on March 1, 2019.  *See* Dkt. No. 41.  Counsel moved to suppress tangible evidence seized during a search of Petitioner's home pursuant to a search warrant as well as statements Petitioner made to law enforcement.  *See it.*  Based on another stipulation, time was excluded between March 4, 2019, and May 3, 2019.  *See* Dkt. No. 44.  The Government was twice granted additional time to file its response to Defendant's motion to suppress.  *See* Dkt. Nos. 45-49.  The Government filed its opposition on May 10, 2019.  *See* Dkt. No. 50.  Defendant replied in further support of his motion on May 17, 2019.  *See* Dkt. No. 52.  The Court denied the motion on July 2, 2019.  *See* Dkt. No. 53.  The parties then stipulated to the exclusion of time between July 3, 2019, and March 30, 2020.  *See* Dkt. Nos. 55-66.

On March 10, 2020, counsel wrote to the Court on Petitioner's behalf requesting a representation hearing.  *See* Dkt. No. 67.  Following a hearing, counsel was relieved and a new attorney was appointed to represent Petitioner.  *See* Text Minute Entry 03/12/2020; Dkt. No. 69. Three more stipulations to exclude time were entered, excluding time between May 11, 2020, and November 21, 2020.  *See* Dkt. Nos. 72-76.  The Government moved to exclude additional time

3

between November 24, 2020, and March 15, 2021. *See* Dkt. Nos. 77, 79. Defendant did not object to the motions, which were granted by the Court. *See* Dkt. Nos. 78, 80.

On March 8, 2021, Defendant filed a letter requesting a representation hearing, stating that he had not spoken to his attorney since October of 2020. *See* Dkt. No. 81. The Court scheduled a representation hearing. *See* Text Notice 03/16/2021. However, a few days later, Defense counsel e-mailed and Court and the Government indicating that he and his client were communicating and Defendant did not require a representation at that time. *See* Dkt. No. 82. Another stipulation was entered by the parties which excluded time between April 9, 2021, and August 23, 2021. *See* Dkt. No. 84. A Trial Order was entered on July 16, 2021, scheduling a jury trial for August 23, 2021. *See* Dkt. No. 86. Both sides filed their pre-trial documents when required including proposed jury instructions, exhibits lists, witness lists etc. *See* Dkt. Nos. 87-101. On August 16, 2021, the Government moved to amend count one of the indictment to delete the reference to a specific number of video and graphic image files. *See* Dkt. No. 102. Defendant did not oppose the motion. *See id.* at 1.

On August 17, 2021, the Court held a conference with the parties during which Defense counsel stated that Defendant wished to enter a guilty plea. *See* Text Minute Entry 08/17/2021. The Court scheduled a change of plea hearing for the next day. *See* Text Minute Entry 08/18/2021. Defendant entered a guilty plea to all three counts of the amended indictment. *See id.*; Dkt. Nos. 104, 105. Sentencing was scheduled for December 20, 2021. *See* Dkt. No. 106. Defendant requested additional time to prepare for the sentencing, *see* Dkt. No. 121, which the Court granted and rescheduled the sentencing for January 13, 2022, *see* Dkt. No. 122.

On January 12, 2022, Defendant filed a letter on his own behalf requesting an adjournment because he had "not received useful assistance from" his court appointed attorney

and would be retaining an attorney. Dkt. No. 125 at 2. Defendant subsequently retained private counsel. *See* Dkt. No. 127. On March 14, 2022, his new attorney filed a letter requesting a two-month adjournment of the sentencing hearing to become acquainted with the case. *See* Dkt. No. 128. He later requested another adjournment to obtain medical records. *See* Dkt. No. 133.

Defendant's sentencing hearing was held on July 26, 2022. *See* Text Minute Entry 07/26/2022. The Court sentenced Defendant to 148 months' imprisonment to be followed by fifteen years of supervised release. *See* Dkt. No. 142. Defendant appealed the Court's judgment, *see* Dkt. No. 146, which was affirmed by the Second Circuit on October 23, 2023, *see* Dkt. No. 152.

On November 27, 2023, Defendant filed a letter with the Court about an issue he wished to include in his appeal concerning his arrest and related interview. *See* Dkt. No. 153. The Court issued a Text Order informing Defendant that the case was closed as judgment had been entered and affirmed. *See* Dkt. No. 154. The presently pending § 2255 motion was filed on June 12, 2025. *See* Dkt. No. 159.

In his motion, Defendant raises eleven grounds, all of which related to alleged ineffective assistance of counsel. *See id.* Specifically, Defendant contends his two trial attorneys and one appellate attorney were ineffective for (1) failing to move to dismiss speedy trial violations; (2) failing to review the speedy trial violations; (3) not discussing the speedy trial violations with Defendant; (4) failing to raise the speedy trial issue on appeal; (5) not obtaining an evidentiary hearing on the motion to suppress; (6) insufficiently challenging the validity of the law enforcement search; (7) failing to raise the deficiencies of trial counsel in his appeal; (8) not permitting Defendant to assist in preparing for trial; (9) failing to investigate or discover evidence; (10) performing inadequate legal research; and (11) failing to retain the right to appeal a

specific suppression argument as part of the plea agreement. *See id.* Defendant also alleges that the Court violated his Sixth Amendment right to counsel by "rejecting/cancelling [his] change of representation hearing." *Id.* at 25.

The Government argues that none of Defendant's contentions have merit. *See* Dkt. No. 161 at 17. For the following reasons, Defendant's motion is denied.

### III. DISCUSSION

**A.      Standard of Review**

Section 2255 of Title 28 of the United States Code states, in relevant part, that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). (quotation marks omitted). Moreover, a movant under § 2255 is barred from relitigating questions "'which were raised and considered on direct appeal,'" *Riascos-Prado v. United States*, 66 F.3d 30, 33 (2d Cir. 1995) (citations omitted), as well as any issue he could have raised on direct appeal, whether he actually raised it on appeal or not. *See Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998).

The Court has the authority to dismiss a motion to vacate under § 2255 without a hearing if the record conclusively demonstrates that the petitioner is not entitled to relief. *See Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003). Further, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b)).

**B.      Ineffective Assistance of Counsel Claims**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. XI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (citations omitted). "'[T]he right to effective assistance of counsel is not confined to trial, but extends also to the first appeal as of right.'" *Knight v. Walsh*, 524 F. Supp. 2d 255, 290 (W.D.N.Y. 2007) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 378 n.2 (1986)). "A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel." *Id.* (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

In assessing a claim for ineffective assistance of counsel, courts apply the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, the petitioner

> "must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient,' . . . so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the

> wide range of professionally competent assistance' . . . ; and (2) he must show 'that the deficient performance prejudiced the defense,' . . . in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'"

*Matthews v. United States*, 682 F.3d 180, 186 (2d Cir. 2012) (quoting *Bennett v. United States,* 663 F.3d 71, 84 (2d Cir. 2011)) (internal citations omitted).

"Under *Strickland*'s first prong, the defendant must show that his lawyer's performance falls outside the 'wide range of professionally competent assistance.'" *Farhane v. United States*, 121 F.4th 353, 374 (2d Cir. 2024) (quoting *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014)) (additional citation and quotation marks omitted). "To assess objective reasonableness, [a court] evaluate[s] 'prevailing professional norms' at the time of representation, using 'American Bar Association . . . standards and the like [as] guides to determining what is reasonable.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). "At its core, this inquiry is 'whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.'" *Carew v. Morton*, 150 F.4th 150, 164 (2d Cir. 2025) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). "The Supreme Court has instructed that this prong 'sets a high bar' to relief for a petitioner because it is 'only when the lawyer's errors were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied.'" *Id.* (*quoting Buck v. Davis*, 580 U.S. 100, 118-19 (2017)).

"Under *Strickland*'s second prong—prejudice—the defendant must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Farhane*, 121 F.4th at 375-76 (quoting *Padilla*, 559 U.S. at 366). "In the plea context, '[a court] do[es] not ask whether, had he gone to trial, the result of the trial would have

8

been different than the result of the plea bargain.'" *Id.* (quoting *Lee v. United States*, 582 U.S. 357, 364 (2017)). "Instead, [a court] consider[s] whether the defendant has demonstrated a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* (citations omitted).

"The *Strickland* standard is 'highly demanding,' . . . and 'rigorous[.]'" *Bennett*, 663 F.3d at 85 (citations omitted). An ineffective assistance of counsel claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Id.* (citation omitted).

### 1. *Speedy Trial (Grounds One through Four)*

"The Speedy Trial Act allows a period of thirty days between arrest and indictment, . . . except for certain periods of delay permitted by statute[.]" *United States v. Culbertson*, 598 F.3d 40, 47 (2d Cir. 2010) (citing 18 U.S.C. § 3161(b), (h)). "If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days." 18 U.S.C. § 3161(b). Some of the sources for delay that are automatically excluded from the Speedy Trial clock are "delay resulting from any pretrial motion," *id.* § 3161(h)(1)(D); "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district," *id.* § 3161(h)(1)(E); "delay resulting from transportation of any defendant from another district . . . [not] in excess of ten days from the date [of] an order of removal," *id.* § 3161(h)(1)(F); and "delay resulting from the absence or unavailability of the defendant or an essential witness," *id.* § 3161(h)(3)(A).

Likewise, "[a]mong the excluded periods of delay are those granted by the court *sua sponte* or at the request of a party, but only upon findings 'that the ends of justice served by the

9

granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.'" *Culbertson*, 598 F.3d at 47 (quoting 18 U.S.C. § 3161(h)(7)(A)).  As to an interest of justice exclusion of time, the speedy trial clock does not run "if the judge granted [a] continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  "'[I]n determining whether to grant [such] a continuance,' the Court 'shall consider' certain enumerated factors, 'among other[ ]' non-enumerated factors; enumerated factors include '[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.'" *United States v. Dafna*, No. 19-CR-408, 2024 WL 4424241, *5 (E.D.N.Y. Oct. 5, 2024) (quoting 18 U.S.C. § 3161(h)(7)(B)(i)).  "District courts have 'broad discretion'  in determining whether to suspend the speedy trial clock."  *Pierce v. United States*, No. 12-CR-340, 2018 WL 4179055, *12 (S.D.N.Y. Aug. 31, 2018), *R. & R. adopted*, 2020 WL 2765091 (S.D.N.Y. May 28, 2020) (quoting *United States v. Plaza-Andrades*, 507 Fed. Appx. 22, 25 (2d Cir. 2013) (summary order)) (quotation marks omitted).

Here, Petitioner contends that his attorneys "permitted an unchallenged delay of 15 months, 8 uncontested USA stipulations for extension[s and] 16 more extensions post indictment."  Dkt. No. 159 at 5.  Petitioner argues that if his attorneys challenged the extensions of time, the complaint or indictment would have been dismissed.  *See id.*  He contends this "issue should have been obvious" and would have prevented him from being incarcerated for five years before trial was scheduled.  *Id.* at 6-8.  Petitioner states that his trial counsel would not respond to his questions about speedy trial and communication was "near impossible" with his appellate attorney.  *Id.* at 5-9.  In asserting that appellate counsel was ineffective, Petitioner argues, in part,

that counsel failed to raise a meritorious challenge to "the five-year delay in trial proceedings without articulating one of the statutorily accepted reasons for trial delay." *Id.* at 9.

The Government argues that Petitioner "does not make any effort to show that his attorneys gave him defective representation in" agreeing to the stipulations nor "does [he] explain how the continuances had any effect on him." Dkt. No. 161 at 18.

In his reply, Petitioner argues that "[e]ffective counsel would not have stipulated to the[] eight 60-day continuances, and would have vigorously defended [his] [c]onstitutional [r]ight to [s]peedy [t]rial." Dkt. No. 165 at 2. Petitioner contends his attorneys "should be interviewed and [] an evidentiary hearing [should] be granted to make determinations of fact whether trial counsel had a legitimate reason for entering into seven post-indictment continuances . . . ." *Id.* at 4. Petitioner states that the continuances went against his "stated [] objective: to go to trial." *Id.*

Over the course of five years before Petitioner pled guilty, he wrote the Court himself, twice. Petitioner filed a letter on March 15, 2021, in which he stated an inability to speak with his trial attorney and a concern that a trial date was "coming soon." Dkt. No. 81 at 1. Petitioner did not take issue with the extensions of time that had been granted up until that point. *See id.* Petitioner filed another letter on January 12, 2022, in which he requested an adjournment of his sentencing hearing to obtain a new attorney. *See* Dkt. No. 125. He did not complain about any alleged speedy trial violations. *See id.*

Courts repeatedly reject an argument that counsel is ineffective for failing to raise a speedy trial challenge where the defendant pled guilty without raising the issue, a speedy trial challenge would be meritless, and the defendant cannot establish prejudice in the attorney's performance. *See United States v. Codner*, No. 18-CR-609, 2025 WL 2466993, *4-5 (E.D.N.Y. Aug. 27, 2025) ("[E]ven had Petitioner's counsel made a motion for an immediate trial, that

11

motion would have been denied. . . . [H]e speculates that, had his case moved more quickly, he might have been sentenced by [another judge] and received a lighter sentence. . . . This conjecture falls well short of the showing *Strickland* requires and is not a cognizable theory of prejudice"); *United States v. Ferrara*, 788 Fed. Appx. 748, 753 (2d Cir. 2019) (concluding that the defendant "failed to move to dismiss the indictment on speedy trial grounds, thereby waiving any claim under the Speedy Trial Act"); *Pierce*, 2018 WL 4179055, at \*14 ("Because Pierce's Speedy Trial Act contentions are meritless, the ineffective assistance claim based on those contentions should be denied").

Indeed, "'[b]ecause a defendant's right to a speedy trial is nonjurisdictional, a knowing and voluntary guilty plea waives a speedy trial claim unless the defendant specifically reserves the right to appeal.'" *Edwards v. United States*, No. 18-CR-163, 2022 WL 255349, \*8 (S.D.N.Y. Jan. 26, 2022) (quoting *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996)). "The decision to enter into plea negotiations with the government requires defense attorneys to make strategic choices in balancing opportunities and risks." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "'[S]trict adherence to the *Strickland* standard' is essential when considering attorneys' choices at the plea bargain stage, and substantial deference must be accorded to counsel's judgment." *Id.* (quoting *Premo*, 562 U.S. at 125). "'[C]onsents to exclude speedy trial time. . . . are in fact commonplace where defense counsel is attempting to negotiate a plea. They thus represent a trial tactic that might be considered sound trial strategy, and cannot constitute ineffective assistance of counsel.'" *Id.* (quoting *Rosa v. United States*, 170 F. Supp. 2d 388, 401 (S.D.N.Y. 2001)).

Moreover, "[t]o establish prejudice, a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Kovacs*, 744 F.3d at 51 (quoting *Strickland*, 466 U.S. at 694). "In determining whether a different outcome sufficiently demonstrates prejudice, [the Court] must keep in mind that 'a defendant has no right to be offered a plea, nor a federal right that the judge accept it.'" *Id.* (quoting *Missouri v. Frye*, 566 U.S. 134, 148 (2012)).

Here, Petitioner never moved to dismiss the case against him on speedy trial grounds. Petitioner never raised the issue in his letters to the Court or while he stood in front of the Court during the change of plea hearing. For the first three years of this case, the exclusion of time was stipulated to by Petitioner's attorneys. *See* Dkt. Nos. 16-75. The Court subsequently granted two motions for the Government seeking to exclude time because "the ends of justice served by granting the requested continuance outweigh the best interests of the public and the defendant in a speedy trial." Dkt. Nos. 78, 80. Those continuances were based in large part on the Covid-19 pandemic which, at the time of the exclusions, was at its height. *See* Dkt. Nos. 78, 80. Petitioner's counsel did not object to the Government's motions. And, "even if [Petitioner] is correct that counsel should have obtained his consent before 'waiving' speedy trial time, [Petitioner] cannot demonstrate that the Speedy Trial Act was violated, and therefore he cannot demonstrate any prejudice resulting from counsel's purported 'error.'" *Akosa v. United States*, 219 F. Supp. 2d 311, 315 (E.D.N.Y. 2002).

Petitioner has not identified any errors in the Court's orders permitting the exclusion of time. Petitioner summarily asserts that the exclusions "lacked legal reason," but the Court expressly found otherwise each time a stipulation or motion was filed. Dkt. No. 159 at 8. Petitioner has not shown that a motion to dismiss the criminal complaint or indictment would have been successful. Therefore, the Court cannot find his attorneys were ineffective for failing

13

to file such a motion. *See Baugh v. United States*, 53 Fed. Appx. 572, 573 (2d Cir. 2002) (summary order) ("As both exclusions were proper under the [Speedy Trial Act], a potential motion to dismiss based upon a [Speedy Trial Act] violation would have failed; thus, defendant has not demonstrated that his counsel was unreasonable in failing to bring such a motion, or that defendant was prejudiced as a result of that failure"). For that same reason, Petitioner has not established a reasonable probability that the outcome of his case would have been different. Petitioner pled guilty and did so knowing that he had not made any speedy trial challenges. As explained later in this decision, Petitioner's plea was knowing and voluntary. Petitioner's post-conviction motion is denied on this issue.

### 2. *Evidentiary Issues (Grounds Five through Seven)*

Petitioner's next group of claims concern a motion to suppress that was filed by his counsel on March 1, 2019. *See* Dkt. No. 41. In that motion, Petitioner sought to suppress the evidence obtained from a search warrant as well as the statements he made to law enforcement. *See id.* His attorney requested that relief on the basis of a written motion, "or, in the alternative, an evidentiary hearing to resolve factual issues that pertain to the motion[] to suppress." *Id.* at 28. The motion primarily challenged whether probable cause existed to support issuance of a search warrant on Petitioner's home and whether the evidence and Petitioner's statements made as a result should be suppressed. *See generally* Dkt. No. 41. The Court did not hold an evidentiary hearing and denied the motion on July 2, 2019. *See* Dkt. No. 53.

In his present § 2255 motion, Petitioner argues that his attorney was ineffective for requesting a hearing "in the alternative" because a "hearing would have easily shown th[e] statement [by the law enforcement officer] to be false; recklessly or intentionally misleading." Dkt. No. 159 at 11. Petitioner asserts that his attorney did not state which facts were in dispute in

14

the motion. *See id.* Petitioner argues that the search warrant affidavit does not attribute specific statements to specific law enforcement officers, nor does it state that any officer actually viewed the child pornography files. *See id.* at 12-13. As to his appellate attorney, Petitioner argues that "counsel[] loosely casts doubt on the veracity and reliability of the Affiant, but fails to directly challenge these statements . . . ." *Id.* at 15.

Petitioner also argues that it was impermissible for federal law enforcement agents to execute a search warrant that had been authorized by a city court magistrate and that trial counsel was ineffective for failing to move to dismiss the case on this ground. *See id.* at 16. Petitioner contends his appellate attorney was ineffective for not raising the ineffectiveness of trial counsel on the issue. *See id.* at 18.

First, as the Government states in its response, both this Court and the Second Circuit recognized the strength in the arguments that Petitioner's attorney made in the motion to suppress. *See* Dkt. No. 161 at 21. In his suppression motion, Petitioner argued that the search warrant lacked probable cause because "the application did not include the actual attachment of images. Significantly, the application contained no sworn statement or even an unsworn police report of [Saratoga Springs Police Department] Investigator Vidnansky describing, in his words, what he observed." Dkt. No. 41-2 at 13. The motion also took issue with the fact that "[t]he search warrant application of [Task Force Officer] Kowalski purports to describe a law enforcement investigation through which, apparently, Investigator Vidnansky acted on information developed from hearsay sources, specifically, the likely application of computer-related functions or programs." *Id.* at 14. Defense counsel also argued that the good faith exception to the Fourth Amendment search warrant requirement should not apply. *See id.* at 18.

In denying the motion to suppress, the Court stated that "the best practice would have been to append the images or describe them in the affidavit. . . .  However, the Court need not decide whether the warrant was supported by probable cause that the files contained child pornography, because the searching officers could rely in good faith on the warrant."  Dkt. No. 53 at 12.  In denying Petitioner's appeal, the Second Circuit likewise noted its "concern about the conclusory nature of the allegations set forth in the warrant application and the application's apparently complete reliance on Pratt's use of BitTorrent to defeat staleness."  Dkt. No. 152 at 7.  The Second Circuit "nonetheless affirm[ed] the District Court's denial of Pratt's motion to suppress on the ground that the searching officers relied in good faith on the issuing judge's determination that the search warrant was supported by probable cause."  *Id.* at 7-8.

In response to Petitioner's argument, the Government contends he "cannot assert that his counsel was deficient for doing what Pratt now says he should have done."  Dkt. No. 161 at 21.  The Court agrees.  Petitioner asserts that his attorneys should have argued that the search warrant and subsequent search and use of his statements was improper.  *See* Dkt. No. 159 at 9-18.  His attorneys made the argument to this Court and on appeal.  Petitioner cannot claim ineffective assistance of counsel based on his attorneys ultimately losing the argument in both courts.  *See Arpi v. Capra*, No. 18-CV-9001, 2025 WL 4482293, *12 (S.D.N.Y. Dec. 30, 2025), *R. & R. adopted*, 2026 WL 189693 (S.D.N.Y. Jan. 23, 2026) ("Counsel 'cannot be deemed ineffective for failing to assert a claim that he had in fact raised.' . . .  Moreover, the fact '[t]hat counsel's suppression motion was ultimately unsuccessful does not amount to ineffective assistance'") (quoting *Zayas-Torres v. Martuscello*, No. 18-CV-526, 2024 WL 4654258, *18 (N.D.N.Y. May 15, 2024), *R. & R. adopted*, 2024 WL 4651817 (N.D.N.Y. Nov. 1, 2024); *Knox v. Rock*, No. 11-CV-882, 2013 WL 474754, *9 (W.D.N.Y. Feb. 6, 2013)).

16

Second, in denying the motion to suppress, the Court also addressed Defense counsel's request for an evidentiary hearing. *See* Dkt. No. 53 at 21. The Court noted that Defendant requested a hearing and the Government did not oppose the request, but denied it nonetheless "because the moving papers have not demonstrated that there are disputed facts essential to the resolution of this motion." *Id.* Again, Petitioner cannot assert that his counsel was ineffective for requesting precisely what he wants, regardless of the Court's ruling.

Petitioner has not demonstrated that his counsel failed to make any meritorious arguments or otherwise acted in a way that prejudiced Petitioner. *See United States v. Schwarz*, 283 F.3d 76, 92 (2d Cir. 2002) ("To prove a lapse in representation, a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests") (citation and quotation marks omitted). Therefore, his ineffective assistance of counsel claims fail as they relate to the motion to suppress.

Third, Rule 41 of the Federal Rules of Criminal Procedure governs the procedure and requirements concerning searches in seizures in federal cases. *See* FED. R. CRIM. P. 41. Petitioner relies on Rule 41(a) which defines a "federal law enforcement officer" as "a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant." FED. R. CRIM. P. 41(a)(2)(C); *see* Dkt. No. 159 at 17. Petitioner argues that because the federal law enforcement agent applied for the search warrant to a city court magistrate, and not a federal judge, the evidence obtained should have been suppressed. *See* Dkt. No. 159 at 17. Petitioner also cites to Rule 41(b), which states that "[a]t the request of a federal law enforcement officer or an attorney for the government: (1) a magistrate judge with authority in the district--or if none is

17

reasonably available, a judge of a state court of record in the district--has authority to issue a warrant to search for and seize a person or property located within the district[.]" FED. R. CRIM. P. 41(b)(1). He argues that the Albany city court does not qualify as a court of record. *See* Dkt. No. 159 at 17. Petitioner also cites a Fifth Circuit case to support his argument. *See id.* (citing *United States v. Hanson*, 469 F.2d 1375, 1376-77 (5th Cir. 1972)). Petitioner argues that his attorney was ineffective for not raising these arguments in the motion to suppress. *See id.*

The Government states that the Albany City Court is a "court of record" such that the warrant complied with Federal Rule of Criminal Procedure 41(a); therefore, Petitioner's attorney was not ineffective for failing to raise the argument. Dkt. No. 161 at 22-23. The Court agrees.

As asserted by the Government, Petitioner's argument fails. *See* Dkt. No. 161 at 22-23. The Fifth Circuit in *Hanson* stated that "the question of whether or not a state court satisfies the 'court of record' requirements of Rule 41(a) must be determined by reference to *state law* and not by attempted federal interpretation of the language of Rule 41(a)." *Hanson*, 469 F.2d at 1377 (emphasis added). In New York, "[e]ach city court outside the city of New York" "is a court of record." N.Y. Judiciary Law § 2(10). As such, the Albany City Court's issuance of the search warrant complies with Rule 41. Therefore, Petitioner's attorney was not ineffective for failing to challenge the search warrant on this ground.

Petitioner argues that federal agents may act pursuant to a warrant only if that warrant was issued by a federal judge. One judge in the Southern District of Indiana recently noted that "[t]he Seventh Circuit has not held that [federal] agents . . . are required to seek a warrant from a federal magistrate judge, and other circuits do not agree on the proper test." *United States v. Wallace*, No. 1:25-CR-61, 2025 WL 2625318, *4 (S.D. Ind. Sept. 11, 2025) (footnote omitted) (citing *United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014) (explaining that agents "working on

18

issues of mutual concern" to federal and state authorities have "flexibility" to "go State or Federal with an investigation"); *United States v. Golson*, 743 F.3d 44, 51-52 (3d Cir. 2014) ("Rule 41(b) will apply, by its own terms, to a search warrant made at the request of a federal law enforcement officer"); *United States v. Claridy*, 601 F.3d 276, 281-84 (4th Cir. 2010) ("Rule 41's application must hinge on whether the proceeding, as distinct from the investigation, was federal")); *see also United States v. Pastrana Roman*, No. 19-CR-104, 2024 WL 2269054, *13 (D.P.R. May 17, 2024) ("[A]ccording to First Circuit precedent, 'if the warrant is issued by a state court under state law then every requirement of Rule 41 is not a *sine qua non* to federal court use of the fruits of a search predicated on the warrant even though federal officials participated in its procuration or execution'") (quoting *U.S. v. Krawiec*, 627 F.2d 577, 580 (1st Cir. 1980)).

Regardless of the nuances in the law about whether an investigation is being led by state or federal law enforcement and whether the agent who applied for the warrant must apply to a state or federal judge, Petitioner has not established a violation of Rule 41 in his case. Petitioner has not established that the federal agent investigating his conduct could only apply for the search warrant to a federal judge. Rather, Rule 41 states that "a magistrate judge with authority in the district--or if none is reasonably available, a judge of a state court of record in the district--has authority to issue a warrant to search for and seize a person or property located within the district." FED. R. CRIM. P. 41(b)(1). Petitioner has not rebutted the fact that Albany City Court is a "court of record" in New York. Therefore, Petitioner has not shown that counsel's actions were defective, and Petitioner's motion is denied.

### 3. Defendant's Right to Go to Trial and Assist in His Own Defense (Ground Eight)

Petitioner argues that his counsel was ineffective because "[f]or the five years in county jail, [he] repeatedly expressed [his] desire to go to trial and [his] needs of assistance" and"[b]ut

for counsels' refusal in helping [him] prepare for trial, . . . [he] could have mounted an effective defense, gone to trial, and the outcome would have been much different." *Id.* Dkt. No. 159 at 19. He states he was "exhausted" and could not do anything from inside the jail, and that his attorneys "threatened" his chance of appeal, so he pled guilty. *Id.* Petitioner contends that his first attorney, an assigned public defender, told Petitioner that he had to plead guilty or Petitioner would have to get another attorney. *See id.* at 21. According to Petitioner, his next appointed attorney said, "I will not assist you in trial. I will be the one handling your appeal. Plead guilty, and I'll immediately start working on it." *Id.* Petitioner states that "[a]fter four brutal years in County, and no hope of assistance, [he] saw no option but to plead[.]" Dkt. No. 165 at 8.

"A guilty plea must be voluntarily, intelligently, and competently given to be considered constitutionally valid." *Simpson v. Melecio*, No. 9:20-CV-36, 2022 WL 19296994, *9 (N.D.N.Y. June 13, 2022), *R.& R. adopted*, 2023 WL 2665463 (N.D.N.Y. Mar. 28, 2023) (citing *Bousley v. United States*, 523 U.S. 614, 618 (1998)). "Upon reviewing a plea, the court is typically limited to considering whether the plea was voluntarily and knowingly entered with the advice of counsel." *Id.* (citing *United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

"'[A] defendant's statements at his plea allocution carry a strong presumption of verity.'" *United States v. Thomas*, 651 F. Supp. 3d 685, 693 (S.D.N.Y. 2023) (quoting *Rosa v. United States*, 170 F. Supp. 2d 388, 402 (S.D.N.Y. 2001)). "The Second Circuit consistently relies on a defendant's sworn statements during a plea allocution to reject later conclusory allegations that the plea was coerced or otherwise involuntary." *Diaz v. United States*, No. 3:17-CV-675, 2020 WL 3799331, *5 (D. Conn. July 7, 2020) (citing *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (explaining that defendant's "testimony" at plea allocution "carries such a strong

presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made"); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea")); *see also Rosenberger v. United States*, 133 Fed. Appx. 799, 801 (2d Cir. 2005) (summary order) ("Rosenberger has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty. Moreover, the plea allocution indicates that Rosenberger's guilty plea on the perjury count was knowing and voluntary"); *Bryant v. Superintendent, E. Corr. Facility*, 17-CV-1199, 2020 WL 8413423, *4 (N.D.N.Y. Oct. 27, 2020), *R. & R. adopted*, 2021 WL 365852 (N.D.N.Y. Feb. 3, 2021) (rejecting argument that the petitioner was coerced into his plea because "after being placed under oath, Petitioner specifically stated that he had fully consulted with his counsel regarding his plea and that he was satisfied with counsel's representation. . . . He also specifically disavowed any claim that he was being coerced into entering a plea").

In the present action, during Petitioner's change of plea hearing, the Court engaged in a in-depth plea colloquy, asking him if he understood the rights he was giving up by pleading guilty and the consequences of pleading guilty. *See* Dkt. No. 170. The Court asked Petitioner if his attorney advised him of his rights and if he was satisfied with his representation. *See id.* at 11. Petitioner responded, "Yes, ma'am." *Id.* The Court asked Petitioner if he had any questions for the Court and he said he did not. *See id.* at 12. The Court inquired as to whether Petitioner was forced or threatened into entering a guilty plea or if he was pleading guilty freely and voluntarily. *See id.* Petitioner affirmed that he was pleading guilty freely and voluntarily. *See id.* The Court asked the Government to explain what it would have proven if the case had gone to trial and then

21

asked Petitioner to confirm the Government's recitation of the facts. *See id.* at 13-18. Petitioner responded, "I believe so. I did definitely do such acts. I could not remember what the exact movies were, but it was of similar -- yes, yes, ma'am." *Id.* at 18. The Court "ask[ed] [] that question again so the record is clear." *Id.* The Court asked if the Government correctly stated what Petitioner did. *See id.* He said, "Yes, ma'am." *Id.*

Petitioner's attorney noted on the record that he reviewed the factual allegations set forth in the plea agreement with Petitioner "prior to coming into court several times." *Id.* Counsel noted that Petitioner's "memory is not perfect. But to clear things up, the prosecutor read what is in the plea agreement which we signed and reviewed extensively, so, yes, that's my understanding." *Id.* at 18-19. The Court asked Petitioner if he had "carefully gone over the plea agreement with [his] attorney." *Id.* at 20. Petitioner said, "Yes, ma'am." *Id.* The Court also asked if Petitioner understood that he was giving up his appellate rights beyond what was included in the plea agreement. *See id.* at 21-22. Petitioner affirmed his understanding. *See id.* at 22. Before concluding the hearing, the Court re-affirmed that Petitioner fully understood his rights, the consequences of his guilty plea, and the penalties, and that he was pleading guilty "because [his is] guilty and for no other reason." *Id.* at 25. Petitioner's attorney stated that he was "completely confident" that Petitioner was pleading guilty freely and voluntarily. *Id.* at 27. Counsel explained that he and Petitioner considered various potential defenses to the case "including diminished capacity or mistake, and specifically we really looked hard at the intent, attacked the intent element of these crimes. And after reviewing that with [Petitioner] and looking at all the cases, [he] could not find a viable defense." *Id.* at 28. The Court then accepted Petitioner's guilty plea. *See id.*

22

Petitioner has not presented any evidence to contradict the strong presumption of validity that is placed on his plea allocution.  Petitioner contends an evidentiary hearing is necessary to resolve this issue because the statements he makes in his motion are more than conclusory.  *See* Dkt. No. 165 at 8.  He states he "saw no option but to plead" because he had spent four years in jail and had "no hope of assistance." *Id.*  Contrary to his assertion, Petitioner's statements are entirely conclusory.  Petitioner could have written to the Court as he had previously done.  Petitioner could have requested an adjournment at the change of plea hearing or asked to speak outside the presence of the Government to discuss his representation.  Petitioner could have chosen not to enter the guilty plea.  Petitioner affirmed under oath that he was pleading guilty freely and voluntarily, and he does not present any information which sufficiently rebuts his own statements.   His motion is denied insofar as he argues he was coerced into pleading guilty and was not permitted to assist in his own defense.

### 4. Investigation and Evidence (Ground Nine)

Petitioner argues that his counsel was ineffective for failing to adequately review or investigate the digital evidence or his medical records.  *See* Dkt. No. 159 at 22.  Specifically, Petitioner states that the digital files "were never again viewed," "were deleted," and were "deleted again" after they "reappeared." *Id.*  Petitioner states that thousands of the digital downloads did not contain "pornography of any kind." *Id.*  Petitioner takes issue with his attorneys' decision not to send him the "police audio" while he was in jail because if he had been able to review it, he would have been able "to pinpoint specific false government statements." *Id.* He also contends that a view of his medical records would have revealed a diagnosis of epilepsy and shown his diabetic ketoacidosis which creates a "state of great mental confusion." *Id.*

Petitioner's assertions are conclusory and find no support in the law.  First, Petitioner has not presented any case law to support an argument that, because he deleted child pornography files, his convictions for distribution, possession, or receipt of child pornography cannot stand. The Second Circuit has rejected that argument.  The Second Circuit has affirmed convictions where "there was ample evidence that [the defendant] intentionally searched for images of child pornography, found them, and knowingly accepted them onto his computer, albeit temporarily," *United States v. Ramos*, 685 F.3d 120, 132 (2d Cir. 2012), or where the defendant "viewed at least 700 images of child pornography, created bookmarks for child pornography websites, and installed and regularly ran (including the day before the search that led to his arrest) software designed to delete temporary internet files."  *United States v. Kornhauser*, 519 Fed. Appx. 41, 43 (2d Cir. 2013) (summary order).  Petitioner's counsel is not ineffective for declining to raise a losing argument.

Petitioner states that "send[ing] to my jail the police audio to review would have allowed me to pinpoint specific false government statements."  Dkt. No. 159 at 22.  Petitioner says nothing else about this issue.  *See id.*  This is wholly inadequate to support a finding that counsel's decision was wrong or that Petitioner was prejudiced by the situation.

As far as Petitioner's medical conditions, the Final Presentence Investigation Report notes that he was diagnosed with diabetes in January 2017.  *See* Dkt. No. 135 at ¶ 58.  There is no mention of epilepsy anywhere in the Report.  There is nothing in the Report nor in Petitioner's motion which shows that his diabetes or purported epilepsy negated his knowledge of the child pornography that he possessed, received, and distributed.  Therefore, Petitioner has not established that his counsel was ineffective for failing to investigate this meritless assertion.

Petitioner's claim related to his attorneys investigation of specific evidence does not warrant relief under § 2255.

### 5. Legal Research (Ground Ten)

Petitioner asserts that his trial and appellate attorneys were ineffective because they failed to conduct proper legal research and relied only on the case of *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015) as part of the motion to suppress. *See* Dkt. No. 159 at 23.

Petitioner is incorrect. In arguing that the information relied upon in the search warrant application was stale, Petitioner's attorney did not rely solely on *Raymonda*. Counsel thoroughly discussed *Raymonda*, which is Second Circuit precedent concerning a search warrant application in a child pornography case, but then cited numerous other cases. *See* Dkt. No. 41-2 at 15-20. Petitioner argues that "[i]f counsels [sic] had done the research, they could have shown by <u>facts</u> that the police were well aware of the issue of staleness and the <u>Raymonda</u> case, and it is far more likely that the . . . motion . . . would have succeeded." Dkt. No. 165 at 10. Petitioner's attorney expressly asserted "that *Raymonda* was binding Second Circuit precedent for more than two years prior to the search warrant application in this case." Dkt. No. 41-2 at 18. As already explained, Petitioner cannot make a claim for ineffective assistance of counsel because his attorney's argument was ultimately unsuccessful.

Petitioner has made blanket assertions that his attorneys failed to conduct sufficient legal research. He has not presented any cases that the attorneys missed, that contradict his attorneys' arguments, or that call into question the Court's suppression decision. Because Petitioner has not shown that his attorneys' performance was defective, his motion is denied.

### 6. Appellate Rights in the Plea Agreement (Ground Eleven)

Petitioner claims ineffective assistance of counsel insofar as his attorney did "not retain[] the right to appeal the motion of suppressing the police interview." Dkt. No. 159 at 24. Petitioner states that he did not see the plea agreement until minutes before the hearing began and he was told "just sign it." *Id.*

"'Where a claim lacks merit, an attorney's failure to preserve it cannot be ineffective assistance of counsel.'" *Knowles v. United States*, No. 11-CR-630, 2022 WL 999078, *11 (S.D.N.Y. Mar. 30, 2022) (quoting *Trudeau v. United States*, No. 16-CV-273, 2017 WL 11527600, *6 (D. Conn. Apr. 13, 2017)); *see also Parker v. Ercole*, 666 F.3d 830, 835-36 (2d Cir. 2012)). "Though counsel 'has no duty to raise every non-frivolous issue that could be raised ... [counsel may not] omit[ ] significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Deida v. United States*, No. 3:13-CV-1608, 2017 WL 2661622, *8 (D. Conn. June 20, 2017) (citation omitted); *see Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994); *Martinez v. United States*, No. 06-CR-591, 2012 WL 1071239, *11 (S.D.N.Y. Mar. 30, 2012) ("[A]s Petitioner's insufficient evidence claim is meritless, his ineffective assistance claim fails").

Petitioner's trial attorney argued before this Court that Petitioner's statements to law enforcement should be suppressed. *See* Dkt. No. 41-2 at 21. Counsel moved to suppress the statements he made during an interview in his home as well as those made at the police station. *See id.* at 21-28. The Court rejected Petitioner's arguments, concluding that Petitioner was not in custody during the in-home interview and his signed *Miranda* waiver at the police station made his statements voluntary. *See* Dkt. No. 53 at 13-20. The Court concluded as such with reference to Supreme Court and Second Circuit precedent. *See id.* Petitioner does not call into question any of the cases the Court relied on nor does he present any argument as to why an appeal from the Court's decision would have been successful. See Dkt. No. 159 at 24.

Indeed, the Court reviewed the audio recording of Petitioner's in-home interview and thoroughly analyzed the issue, explaining that "[t]he audio recording shows that Defendant never asked to end the interview, was never told that he could not leave, and never asked to check on his wife or to join her in the other room" and "[a]lthough the agents were dressed in law enforcement uniforms with bullet proof vests, . . . the interview tone was conversational, and the agents never raised their voices or threatened Defendant." Dkt. No. 53 at 16-17. As to the *Miranda* waiver, this Court noted that Petitioner never "argued that his waiver was not knowing and voluntary." *Id.* at 20 n.5. Petitioner does not make such an argument now, either. *See* Dkt. No. 159 at 24.

Petitioner argues that his right to appeal a specific portion of the Court's decision should have been preserved in his plea agreement, but he has not demonstrated that an appeal is likely to have been successful. As such, he has not established that he was prejudiced by counsel's performance in negotiating the plea agreement.

### 7. Change of Representation Hearing (Ground Twelve)

In Petitioner's final ground for relief, he argues that the Court violated his Sixth Amendment right by cancelling a representation hearing. *See* Dkt. No. 159 at 25.

On March 15, 2021, Petitioner wrote to the Court stating that he was concerned about the lack of contact he had with his second court-appointed attorney. *See* Dkt. No. 81 at 1. The Court scheduled a representation hearing. *See* Text Notice 03/16/2021. On March 23, 2021, Petitioner's attorney e-mailed the Court stating that he spoke with Petitioner and Petitioner wanted to continue to be represented by the attorney.[1] That is the reason the Court cancelled the representation hearing. *See* Text Order 03/23/2021.

---

[1] Counsel's e-mail communication with the Court has been noted on the docket in a "Chambers note" which is presently viewable only to the Court.

Petitioner argues that if the Court had permitted him to substitute his attorney, he "would have gone to trial." Dkt. No. 159 at 26. Petitioner acknowledges that when he was before the Court for the change of plea hearing, the Court asked Petitioner if he was satisfied with his representation. *See id.* However, Petitioner contends, "[i]f I told the Judge that day, 'No, I'm not satisfied, my lawyer has not given me the chance to review the agreement, I see problems, and I really want to go to trial, but he won't help' what would be the likely result?" *Id.* Petitioner refers to the Court cancelling the representation hearing as a "denial of a change of lawyer." *Id.*

Petitioner's contentions do not warrant relief. First, the Court is certain that had Petitioner contacted the Court stating that he still wanted a representation hearing after it had been cancelled, the Court would have held one. Second, Petitioner had every opportunity during the change of plea hearing to tell the Court that he wanted to go to trial and he felt he was not being appropriately represented. Third, his appointed counsel was preparing to go to trial. Petitioner's attorney submitted all pre-trial documents that the Court requires including a trial brief, witness list, proposed jury instructions, etc. *See* Dkt. Nos. 96-99. The Court asked Petitioner during the change of plea hearing if he knew that he was giving up his right to a trial by pleading guilty and if that was what he wanted to do. *See* Dkt. No. 170. Petitioner did not once state that he wanted to proceed to trial with a new attorney. *See id*.

"While the Sixth Amendment guarantees the right to counsel for criminal defendants, indigent defendants do not have a veto over who is appointed to defend them, provided that appointed counsel's representation is adequate." *Felder v. Goord*, 564 F. Supp. 2d 201, 220 (S.D.N.Y. 2008) (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989); *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997)). "Substitution of assigned counsel during trial requires the defendant to 'show good cause, such as a conflict of interest, a complete breakdown

28

in communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *Id.* (quoting *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972)). "The Sixth Amendment may be violated where a court 'refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney.'" *Id.* (citation omitted). "In the absence of a genuine conflict implicating the Sixth Amendment, '[j]udges must be vigilant that requests for appointment of a new attorney on the eve of trial not become a vehicle for achieving delay.'" *Id.* (quoting *United States v. Llanes*, 374 F.2d 712, 717 (2d Cir. 1967)).

The Court took immediate action upon receiving Petitioner's letter stating he was having trouble communicating with his second appointed counsel by scheduling a hearing. *See* Dkt. No. 81; Text Notice 03/16/2021. The Court cancelled that hearing only based on representations from Petitioner's attorney that they had communicated and worked through the issue. Petitioner does not argue that fact. The Court never "refuse[d] to inquire into a seemingly substantial complaint about counsel." *Calabro*, 467 F.2d at 986. The Court repeatedly reaffirmed the voluntariness of Petitioner's plea, that he was adequately informed of his rights, and that he was fully satisfied with his representation. *See* Dkt. No. 170 at 11. Petitioner's motion to vacate is therefore denied.

## C.    Evidentiary Hearing

Petitioner asks the Court to conduct an evidentiary hearing, arguing that a hearing would allow him to demonstrate that his plea was involuntary and coerced. *See* Dkt. No. 165 at 8. He also seeks a hearing "to make determinations of fact whether trial counsel had a legitimate reason for entering into" the speedy trial stipulations. *Id.* at 4.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the

29

issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). However, "[t]he filing of a § 2255 motion does not, by itself, obligate the district court to conduct an evidentiary proceeding." *Smith v. United States*, No. 1:20-CV-04195, 2020 WL 13065428, *4 (S.D.N.Y. Dec. 31, 2020), *R&R adopted*, 2022 WL 443631 (S.D.N.Y. Feb. 14, 2022) (citing *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977)). "'[A]n evidentiary hearing is required on a [§] 2255 motion only when the papers on the motion, measured by the same standards of competence and admissibility applicable to motions for summary judgment, reveal the existence of a genuine issue of material fact.'" *United States v. Sahabir*, 880 F. Supp. 2d 377, 383 (N.D.N.Y. 2012) (quoting *Lamberti v. United States*, 22 F. Supp. 2d 60, 71 (S.D.N.Y. 1998), *aff'd*, 201 F.3d 430 (2d Cir. 1999)).

"An evidentiary hearing is not required 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.'" *Id.* (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970)); *see Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) ("[I]n order to warrant an evidentiary hearing in the district court on a . . . § 2255 petition, 'the application must contain assertions of fact that a respondent is in a position to establish by competent evidence . . . . Airy generalities, conclusory assertions and hearsay statements will not suffice . . . .'") (citation and internal quotation marks omitted). "[E]ven if the motion presents factual issues, the district court has the authority to deny the motion without a hearing when the motion, any attached exhibits, and the record of the prior proceedings plainly show that the movant is not entitled to relief." *United States v. Handford*, No. 5:14-CR-0273, 2016 WL 8670498, *3 (N.D.N.Y. Oct. 25, 2016) (citing *Puglisi*, 586 F.3d at 214). "In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing, for

30

'[s]olemn declarations in open court carry a strong presumption of verity.'" *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (quoting *Blackledge*, 431 U.S. at 74).

In the present matter, the Court finds no evidentiary hearing is necessary. Based upon the Court's review of the record including Petitioner's plea allocution, and the relevant law, the Court is persuaded that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Petitioner's self-serving statements which plainly contradict the record do not entitle him to a hearing. *See Stitsky v. United States*, No. 06-CR-357, 2018 WL 10741470, *6 (S.D.N.Y. Oct. 25, 2018) ("'Where, as here, a habeas court is faced with self-serving allegations that are contradicted by a credible affirmation [from] a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings'") (quoting *Castrillo v. Breslin*, No. 01-CV-11284, 2005 WL 2792399, * 13-14 (S.D.N.Y. Oct. 26 2005)); *United States v. Salvagno*, No. 5:02-CR-0051, 2013 WL 12364812, *7 (N.D.N.Y. July 25, 2013) ("Because the files and record conclusively show that the § 2255 Motions are without merit, the Court finds that no evidentiary hearing is warranted").

**D.    Certificate of Appealability**

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1).[2] A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

---

[2] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." FED. R. APP. P. 22(b)(1).

2253(c)(2).  Petitioner has failed to make such a showing with regard to his claims; therefore, the Court declines to issue a Certificate of Appealability.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 159) is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued in this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

Dated:  May 29, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

32